UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AUTO KONNECT, LLC,

            Case No. 18-14019
   Plaintiff,      Hon. Gershwin A. Drain

vs.

BMW OF NORTH AMERICA, LLC, *et al.*,

   Defendants.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION *IN LIMINE* TO PRECLUDE BMWNA FROM PRESENTING EXPERT OPINION TESTIMONY FROM LAY WITNESSES[#109], DENYING PLAINTIFF'S *DAUBERT* MOTION TO EXCLUDE CERTAIN SPECIFIC EXPERT TESTIMONY FROM BRENT MCDADE [#111], DENYING DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S DAMAGES EXPERT [#113], DENYING DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S INDUSTRY EXPERT, FRANK FERRARA [#115], AND GRANTING DEFENDANT'S MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFF'S OWNER, RICHARD ROSS, AS AN EXPERT WITNESS [#119]**

I.  INTRODUCTION

  Plaintiff Auto Konnect, LLC (AK) and Defendant BMW of North America, LLC (BMWNA) were parties to two Service Provider Agreements (SPAs) that expired on December 31, 2018.  Prior to expiration of the SPAs, BMWNA directly hired all 38 of AK's field workforce without obtaining authorization and failing to pay replacement costs and expenses consistent with Section 12 of the parties' SPAs.

On January 6, 2021, the Court entered an Order granting partial summary judgment in favor of Plaintiff as to liability on the Plaintiff's breach of contract claim. The Court's January 6, 2021 Order further denied the Defendant's Motion for Summary Judgment, concluding questions of material fact remained as to the Plaintiff's claim for breach of the covenant of good faith and fair dealing when it failed to alert AK in May of 2018 that it planned to hire its external workforce and, instead, suggested to AK that it intended to extend and expand AK's field force program.

Now before the Court are various motions filed by the parties, including: (1) Defendant's Motion to Exclude the Testimony of AK's Industry Expert, Frank Ferrara, (2) Plaintiff's Motion *in Limine* to Preclude BMWNA from Presenting Expert Opinion Testimony from Lay Witnesses, (3) Defendant's Motion to Exclude the Testimony of AK's owner, Richard Ross, as an Expert, (4) Defendant's Motion to Exclude AK's Damages Expert, Alexander Clemmons, and (5) Plaintiff's *Daubert* Motion to Exclude Certain Specific Expert Testimony from Brent McDade. These matters are fully briefed, and a hearing was held on May 11, 2021. For the reasons that follow, the Court will grant Plaintiff's Motion in Limine to Preclude Defendant's lay witness from testifying as experts, deny Defendant's Motion to Exclude the Testimony of Industry Expert, deny Defendant's Motion to Exclude Plaintiff's damages expert, grant in part Plaintiff's

Motion to Exclude Certain Testimony from Defendant's expert, and grant Defendant's Motion to Preclude Richard Ross from testifying as a witness.

## II. FACTUAL BACKGROUND

In 2016, the parties entered into two SPAs concerning a pair of programs referred to as the "Aftersales Sales Manager" ("ASM") program and the "Regional Product Trainer" ("RPT") program. Under the SPAs, paragraph 12 states:

> 2. EMPLOYMENT OF PROVIDERS' STAFF: Should any of P[laintiff]'s employees who are engaged in any way in providing the Services provided for herein become employed directly by [Defendant] during the term of this Agreement and 1 year after termination of this Agreement, [Defendant] agrees to obtain written authorization from [Plaintiff] and agrees to pay all expenses & fees directly associated with replacement of such individual. [Defendant] also recognizes that by hiring [Plaintiff's] associates, the ability to perform in the applicable market will be hindered for a period of time and during such period lack of performance is not grounds for introduction of a third party or termination under the terms of this contract.

*Id*. Additionally, the parties agreed that "either party may terminate this Agreement without cause; by providing other Party with (90) days written notice prior to termination." *Id.* Under the SPAs, Defendant had "the option for a possible extension of 2 years . . . ." *Id*. at 1587.

Defendant claims that sometime in late 2017 or early 2018, BMWNA began discussions about insourcing some of its external workforce. However, around the same time Defendant was considering insourcing all of its external employees, it also asked Plaintiff to provide a quote to expand Defendant's RPT program.

3

In September of 2018, Defendant sent a letter to all of its external vendors, including AK, announcing that it planned to offer internal BMWNA positions to some of the vendors' employees. *Id.* at PageID.1731. The letter further stated that "[a]s of today's date, this change does not impact our business relationship with your company," and it only applies to "a portion." ECF No. 91, PageID.1833.

Thereafter, notwithstanding AK's October 18, 2018 cease and desist letter, Defendant proceeded to hire all thirty-eight of Plaintiff's employees servicing the SPAs on December 17, 2018, which was during the term of the SPAs. Plaintiff maintains that had Defendant given adequate notice of its intent to hire Plaintiff's entire external workforce, Plaintiff would have aggressively pursued other field force opportunities and would have been able to find them. Defendant counters that Plaintiff had no work for the 38 employees Defendant hired and they would have been laid off. Defendant further asserts that Plaintiff never replaced its workforce employees, thus it is Defendant's position that it owes nothing to Plaintiff for replacement costs.

### III.  LAW & ANALYSIS

#### A.  Standard of Review

Rule 701 of the Federal Rules of Evidence provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue;
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. A party offering an expert's opinion bears the burden of establishing the admissibility of such opinion by a preponderance of the evidence. *Nelson v. Tennessee Gas Pipeline Co.*, 243 F.3d 344, 251 (6th Cir. 2001). Expert testimony is admissible only if it satisfies the requirements of Rule 702 of the Federal Rules of Evidence, which states:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods, and;
(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court must determine whether the expert's testimony meets three requirements: (1) the expert witness must be qualified by "knowledge, skill, experience, training or education," (2) the proffered testimony is relevant and "will assist the trier of fact to understand the evidence or to determine a fact in issue," and (3) the testimony is reliable in that it is based on scientific, technical or other specialized knowledge. Fed. R. Evid. 702; *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 529 (6th Cir. 2008).

### B. Defendant's Motion to Exclude Plaintiff's Automotive Industry Expert

BMWNA argues AK's automotive industry expert, Frank Ferrara, is not qualified to opine on the customs and practices of the automobile industry, and his opinions are neither relevant nor reliable. BMWNA requests that the Court preclude Mr. Ferrara's testimony as an expert witness and his February 3, 2020 report.

Ferrara intends to offer four opinions, including:

1. Automotive industry customs and practices do not generally permit OEMs to directly hire external suppliers' employees without permission and without compensation and Section 12 of the SPAs should be understood as implementing that custom and practice.

2. BMWNA's actions encouraging AK to expand the RPT program under the SPAs, refusing to notify AK of its intent to terminate the SPAs until the last day of the contract, and then hiring all of AK's employees during the term of the SPAs, are far outside the boundaries of reasonable custom and practice in the automotive industry.

6

3. Had AK been informed by BMWNA that it would not renew the program with at least 9 months' notice, as AK would reasonably expect given automotive industry custom and practice, AK more likely than not would have found another OEM willing to hire one or both of AK's service programs.

4. The reason OEMs hire external service providers such as AK to run programs like those detailed in the SPAs is to increase customer satisfaction and total sales, resulting in increased profit to the OEM. Based on the available evidence and the amount of money BMWNA spent on AK's programs, it is likely BMWNA obtained a significant increase in profits from accessories sales and increased vehicle sales due to the SPAs.

ECF No. 115, PageID.3787-3788.

Here, the Court concludes Ferrara is qualified to testify regarding automotive industry customs and practices, as well as the market for external service providers such as AK. Ferrara has more than 40 years of experience working in the automotive industry, with 30 of those years working at Hyundai Motor America as the Executive Vice President of the Customer Satisfaction Division. ECF No. 115, PageID.3784. He has also worked for other OEMs such as Toyota and Kubota Tractor. *Id*. At both Toyota and Hyundai, he was responsible for accessories development, sales and marketing. *Id*. During the course of his career, Ferrara has maintained a close relationship with a large number of external suppliers that were critical to the success of the OEMs he worked for, including J.D. Power and others. Ferrara was responsible for over 30 programs using these external suppliers at the dealership level. *Id*. Additionally,

Ferrara has been twice recognized as the Automotive News All-Star for Parts and Service, most recently in 2016.

BMWNA challenges Ferrara's qualifications based on an incorrect recitation of Ferrara's relevant work experience in the automotive industry. Ferrara's extensive experience with OEM-vendor relations and training programs such as the RPT and ASM programs at issue here render him qualified to testify on industry customs and practices.

He is also qualified to testify as an expert on the purpose of OEMs' and external suppliers' programs, and the likelihood that AK would have been able to provide its service program to another OEM had AK been given notice of BMWNA's intent not to renew or expand the RPT and ASM programs. *See Cao Group, Inc. v. Federal Mogul Corp.*, No.09-cv-11354, 2011 WL 867723, at *6 (E.D. Mich. Mar. 10, 2011) (thirteen years of experience at one OEM, Ford Motor Company, qualified proffered expert to testify to industry practices in the area of parts procurement); *First Tennesee Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 332-33 (6th Cir. 2001)(extensive career in banking industry qualified proffered expert to testify on prudent banking standards).

In addition to asserting Ferrara lacks the qualifications necessary to provide expert testimony on industry customs and practices, BMWNA also asserts Ferrara's opinions are not relevant or reliable. However, in so arguing, BMWNA

8

again mischaracterizes Ferrara's testimony and report. BMWNA's complaints are suitable for cross examination, but they are not suitable for excluding Ferrara's testimony and report. For instance, BMWNA argues Ferrara is offering improper legal conclusions, however he is merely stating the parties' respective positions on the interpretation of Section 12 in his report. Moreover, BMWNA faults Ferrara for failing to answer certain questions during his deposition, yet the questions were wholly improper because they either sought a legal conclusion or sought information outside the scope of Ferrara's report. To the extent BMWNA suggests Ferrara's opinion is that industry customs and practices can override an explicit contract term, this is not his opinion.

When an expert "witness is relying solely or primarily on experience, []the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Rees v. Target Corp.*, No. 06-cv-10676, 2008 WL 7440009, at *4 (E.D. Mich. Mar. 21, 2008). Ferrara's report explains OEM and third party vendor relationships based on his industry experience and concludes, after review of documents in the record, BMWNA's conduct in this case was outside the bounds of reasonable custom and practice.

In Ferrara's experience, he has never seen an OEM poach a third party supplier's entire work force or refuse to state its intent with regard to contract

9

renewal, and this experience provides the basis for his opinions. His testimony is relevant to AK's covenant of good faith and fair dealing claim.

BMWNA also argues Ferrara's testimony will not assist the jury because of the presence of the three largest American auto manufacturers in this district. However, the Court has been given no basis upon which to conclude the average citizen of this district would have experience with OEM and third party supplier programs and relationship expectations. Finally, BMWNA offers no legal authority for its argument that in order to testify on industry customs and practices, said standards must be codified in a formal document.

For all of these reasons, the Court denies BMWNA's Motion to Exclude the Testimony of AK's Automotive Industry Expert.

### C. Plaintiff's Motion *in Limine* to Preclude BMWNA from Presenting Expert Opinion Testimony from Lay Witnesses

Plaintiff moves to exclude BMWNA's employees from testifying as expert witnesses on industry customs and practices. AK suggests that BMWNA is likely to improperly try to rebut Ferrara's testimony that BMWNA's actions were outside the bounds of industry standards with testimony from its employees.

Here, the Court concludes BMWNA's employees can testify under Rule 701 as to their own personal knowledge of BMWNA's practices based on their work history and perceptions. BMWNA's employees may not testify concerning the general automotive industry outside of BMWNA or other topics beyond their own

perceptions. BMWNA did not disclose these witnesses as experts as required by Rule 26(a)(2)(B) and (C) of the Federal Rules of Civil Procedure. As such, these witnesses may provide fact testimony to rebut Ferrara's testimony, however they may not provide expert testimony under Federal Rule of Evidence 702 to attack his opinions.

Based on the foregoing considerations, the Court will grant Plaintiff's Motion *in Limine* to Preclude BMWNA from presenting expert testimony from its lay witness employees.

**D. Motion to Exclude Richard Ross as an Expert Witness**

BMWNA moves to exclude Richard Ross from testifying as an expert witness in this matter. Ross is an owner of AK and intends to offer the following expert opinions: (1) automotive industry custom and practice does not generally allow an OEM to poach its vendors' workforce and that BMWNA's actions were outside the boundaries of reasonable custom and practice in the automotive industry, (2) that AK would likely have found another OEM customer for its field force program if given sufficient notice, and (3) OEMs' external vendors like AK's field force program increase customer satisfaction, increase accessory and vehicle sales and reduces costs, therefore, OEMs like BMWNA benefit from AK's programs in that way.

BMWNA argues the Court should preclude Ross from offering his expert opinions because he is not qualified, and his opinions are not relevant or reliable. Here, Ross's testimony is properly excluded under *Daubert*. Mr. Ross has a bachelor's degree in electrical engineering. He started AK in 2006 and only has experience providing staffing services to a single OEM for ten years. This is unlike Mr. Ferrara's decades of experience with multiple OEMs and external supplier programs for accessories, sales, and marketing.

Moreover, Mr. Ferrara will provide expert testimony on industry customs and practices with respect to OEMs and third party suppliers' programs and relationships stemming therefrom. As such, as the owner of AK, Ross may provide fact testimony that AK would likely have found another OEM customer for its field force program with sufficient notice, and he may also testify concerning the benefits his field work force provided to the ASM and RPT programs. Ross has personal knowledge of this information. However, Ross may not provide expert testimony on automotive industry customs and norms between OEMs and third party suppliers under Federal Rules of Evidence 702. The Court will therefore grant BMWNA's Motion to Exclude Richard Ross as an Expert.

### E. Motion to Exclude Plaintiff's Damages Expert

BMWNA moves to exclude the expert testimony of Plaintiff's damages expert, Alexander Clemons. Clemons has offered three opinions regarding AK's

12

damages resulting from Defendant's breach of contract and breach of the covenant of good faith and fair dealing, assuming a jury returns a verdict in favor of AK on the latter claim.

First, Clemons determined the amount of expenses AK would have had to incur as a result of BMWNA's destruction of AK's entire field force program, assuming AK was required to mitigate its damages, and he came to the conclusion that AK's damages are between $3.8 million and $5.5 million dollars.

In the alternative, Clemons determined the net present value of AK's field force program, assuming AK was not required to mitigate its damages or could not rebuild its field force, to be between $8.8 million and $12 million dollars. It is AK's contention that these figures are the appropriate measure of damages.

Finally, Clemons also alternatively provides a figure of $22 million to $26 million as the amount BMWNA saw in profits as a result of its breaches if the jury determines AK is entitled to disgorgement of BMWNA's profits.

BMWNA asserts Clemons is not qualified to offer his opinion on AK's damages because Clemons is not a Certified Public Accountant. Nor does Clemons possess any certifications or credentials as a business valuation analyst and he is not a member of any nationally recognized or accredited organizations in the area of business valuation.

Contrary to BMWNA's assertions, Clemons is qualified to testify regarding the calculation of AK's economic damages. He holds a Juris Doctor degree and a Master's degree in Business Administration with twelve years of experience involving evaluation of economic damages in litigation. ECF No. 113, PageID.3528. He has supplied expert services in damages calculations for six cases and assisted with the calculation of economic damages in another 26 cases. *Id*. at PageID.3529-32.

Clemons' education and experience therefore qualify him to aid the jury in determining AK's damages. *See Mannino v. Int'l Mfg. Co.*, 650 F.2d 846, 850 (6th Cir. 1981); *see also Popovich v. Sony Music Entertainment, Inc.*, 508 F.3d 348, 359 (6th Cir. 2007). Here, Defendant's claim Clemons does not qualify because he is not a CPA, a certified business valuation analyst or member of a nationally accredited professional valuation guild is without merit. None of these facts render him unqualified to offer his opinion on Plaintiff's harm resulting from Defendant's breaches. *See Treadway v. Smith & Wesson Corp.*, 950 F.Supp. 1326, 1336 n.9 (E.D. Mich. 1996) (internal quotation marks and citation omitted) ("When a court qualifies a person as an expert, specific degrees, certificates of training or membership in a professional organization are not required."). Clemons has the education and experience to assist the jury with the determination of AK's

14

damages resulting from BMWNA's decision to hire AK's entire field force without authorization or payment of replacement expenses and costs.

Next, Defendant argues that even if the Court determines he is qualified, his opinion should nonetheless be excluded because it is not relevant nor reliable. Defendant relies on three separate reasons for its position. First, BMWNA complains Clemons relied solely on data supplied by AK without independently verifying the accuracy of those documents. Second, Clemons made several assumptions in his calculations for which there is no factual support in the record, and which consist of pure speculation. Finally, BMWNA maintains that Clemons' opinion does not adhere to any professional standard.

The Court disagrees with Defendant that Clemons' opinions are unreliable and irrelevant. It was permissible for Clemons to rely on the data supplied by AK. Defendant's arguments go to the weight of this evidence rather than its admissibility because as long as there is some support in the record for the data relied upon, an expert's testimony is reliable. *In re Scrap Metal*, 527 F.3d at 530; *see also Jahn v. Equine Services*, 233 F.3d 382, 390-93 (6th Cir. 2000) (reversing for abuse of discretion district court's decision excluding expert because he relied on disputed facts in formulating his opinion).

Unlike the facts in *Orthofix, Inc. v. Lemanski*, a case relied upon by Defendant, Clemons did not rely on data containing a known error. No. 13-cv-

15

11421, 2015 WL 12990115, *4-5 (E.D. Mich. Sep. 29, 2015). Nor has Clemons been alerted to any error with respect to the data he relied upon that would have necessitated further document research as in *Lemanski*. *Id.* Moreover, Rule 703 expressly allows an expert to rely on facts and data "that the expert has been made aware of or personally observed." Fed. R. Evid. 703.

It was also not improper for Clemons to rely on AK's reported net income because an expert's projections of future income based on past income, even with changed circumstances, does not involve unrealistic speculation and is admissible. *See Andler v. Clear Channel Broadcasting, Inc.*, 570 F.3d 717, 729 (6th Cir. 2012).

Finally, BMWNA's complaint that Clemons' opinion is not based on any professional standard is without merit. Defendant offers no authority for its position and ignores that Clemons' opinions are based on his education and experience in the field of assessing economic damages for litigation. His opinion uses a discounted cash flow analysis to determine the amount of damages suffered by AK and cites to a relevant treatise supporting his use of this methodology. ECF No. 113, PageID.3515-3518. Defendant's own damages expert, Brent McDade, agreed during his deposition that a discounted cash flow analysis is the appropriate method for appraising the value of a revenue stream. *See* ECF No. 113, PageID.4037.

Based on the foregoing considerations, Clemons is qualified to opine on AK's damages and his opinion is relevant and reliable. Accordingly, Defendant's Motion to Exclude Plaintiff's Damages Expert will be denied.

**F. Plaintiff's *Daubert* Motion to Exclude Certain Specific Expert Testimony from Defendant's Damages Expert**

AK seeks to preclude BMWNA's damages expert, Brent McDade, from testifying about his opinions found in Sections III.A through III.C of his expert report. AK also seeks to prevent McDade from offering any opinions as to what actions BMWNA would have taken had it not hired AK's 38 employees in December of 2018. As to these opinions, AK complains McDade applied no specialized knowledge, rather, he merely reviewed deposition testimony and his conclusions usurp the jury's factfinding duties.

Specifically, McDade's report concluded (1) there is no market for AK's services under the SPAs outside of BMWNA, (2) AK suffered no damages related to the hiring of the employees, (3) it was unreasonable to assume AK would have enjoyed a contract extension and expansion, (4) AK's expenses and costs total $0, and (5) AK's lost profits span the term December 17, 2018 through December 31, 2018.

McDade is an Accredited Senior Appraiser and a Certified Valuation Analyst, and he currently is the Business Valuation Practice Leader at a large, regional public accounting firm. He has a B.A. in Business Administration and

17

Economics and 25 years of experience in business valuation and economic damages. Defendant seeks to rely on McDade as a rebuttal expert witness to Clemons' discounted cash flow valuation damages analysis.

The Court finds McDade is qualified by specialized knowledge and valuation expertise to opine on AK's damages. The Court further concludes that McDade's opinions are admissible and relevant to the damages issues. Plaintiff complains that McDade only relied on portions of AK's owners' deposition transcripts to reach his conclusion which merely parrots BMWNA's counsel's legal conclusions. Plaintiff's arguments go to the weight of McDade's testimony, rather than its admissibility because as long as there is some support in the record for the data relied upon, an expert's testimony is reliable. *In re Scrap Metal*, 527 F.3d at 530; *see also Jahn v. Equine Services*, 233 F.3d 382, 390-93 (6th Cir. 2000) (reversing for abuse of discretion district court's decision excluding expert because he relied on disputed facts in formulating his opinion). Accordingly, Plaintiff's *Daubert* Motion to Exclude Certain Specific Expert Testimony from Brent McDade is DENIED.

## IV. CONCLUSION

Accordingly, for the reasons articulated above, Defendant's Motion to Exclude the Testimony of AK's Industry Expert, Frank Ferrara [#115] is DENIED.

18

Plaintiff's Motion *in Limine* to Preclude BMWNA from Presenting Expert Opinion Testimony from Lay Witnesses [#109] is GRANTED. BMWNA's employee witnesses may provide fact testimony to rebut Ferrara's testimony, however they may not provide expert testimony.

Defendant's Motion to Exclude the Testimony of AK's owner, Richard Ross, as an Expert Witness [#119] is GRANTED. Ross may provide fact testimony that AK would likely have found another OEM customer for its field force program with sufficient notice, and he may also testify concerning the benefits his field force team provided to the ASM and RPT programs. However, Ross may not provide expert testimony on automotive industry customs and norms between OEMs and third party suppliers.

Defendant's Motion to Exclude AK's Damages Expert, Alexander Clemons [#113] is DENIED.

Plaintiff's *Daubert* Motion to Exclude Certain Specific Expert Testimony from Brent McDade [#111] is DENIED.

SO ORDERED.

Dated: March 9, 2022 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 9, 2022, by electronic and/or ordinary mail.

<u>/s/ Teresa McGovern</u>
Deputy Clerk